NELLIE MURPHY, Respondent, *v.* HUDSON AND MANHATTAN RAILROAD COMPANY, Appellant.

WILLIAM MURPHY, Respondent, *v.* HUDSON AND MANHATTAN RAILROAD COMPANY, Appellant.

First Department, December 7, 1917.

Railroad — negligence — allowing snow and slush to accumulate on platform — injury to passenger falling thereon — pleading — complaint — issues — admissibility of evidence and erroneous charge as to depression in platform — verdict against weight of evidence — duty toward passengers using level platform — failure to erect ropes or handrails.

A passenger in an action against a railroad company for personal injuries alleged that she " was caused to slip and fall on the snow and slush lying on " the platform and that the resulting injuries were sustained solely through the negligence and carelessness of the defendant in failing to keep the platform in a safe condition for travel and in preventing it to become in a dangerous and unsafe condition. No defect in the platform was charged. The plaintiff testified as follows, " my left foot went out from under me and I fell right down on my left side." This is the only explanation she gave with respect to the accident except that earlier in the day she had noticed that it was wet in the place where snow had been blowing down.

*Held,* that evidence having been received over objection as to a depression in the platform it was reversible error for the court to so charge that the jury might have understood that there could be a recovery on the theory that the defendant was negligent in allowing the depression to be or remain in the platform although there was no such issue tendered.

Even if there was evidence of defendant's negligence upon which the plaintiff was entitled to have the case submitted to the jury the verdict is clearly against the weight and preponderance of the evidence and should be reversed and the complaint dismissed.

The defendant was bound to use only ordinary care toward passengers with respect to its level, concrete platform extending from the bottom of the stairway to its ticket office and connecting with the platform at which the trains stopped.

Negligence may not be predicated against the defendant for a failure to erect ropes or handrails for the use of people walking on its level platform.

Appeal in each case by the defendant, Hudson and Manhattan Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff in each case, which judgments were entered in the office of the clerk of the county of New York on the 4th day of December, 1916, upon the verdicts of a jury, in the first case for $500 and in the second case for $250, and also defendant appeals in each case from the order, entered in said clerk's office on the 14th day of December, 1916, denying its motion in each case for a new trial made upon the minutes.

*Chester E. Frankel,* for the appellant.

*Richard J. Donovan* [*Herbert D. Cohen* with him on the brief], for the respondents.

Laughlin, J.:

The first of these actions is to recover for personal injuries sustained by the plaintiff therein, who for brevity will be referred to generally as the plaintiff, and the other is by her husband to recover the resulting damages to him. The actions were tried together.

The defendant is a common carrier of passengers for hire and owns and operates the Hudson river tubes and the subways in the borough of Manhattan connected therewith. One of its stations is at Christopher street and the entrance is through a building on the northerly side of Christopher street and by four flights of stairs, descending a distance of about ninety feet making at least one turn, with a platform or landing at the foot of each. From the bottom of the stairway a concrete platform extends on a level a distance of about fifteen feet to a ticket office and connects, on the same level, with the platform at which the trains stop.

The negligence with which the defendant was charged in the complaint was in allowing snow and slush to accumulate on this platform on the 3d of April, 1915.

The officer in charge of the United States Weather Bureau, called by the plaintiff, testified from the office records that on that day a snow storm set in at eight-thirty A. M. and continued without cessation until eleven P. M. and that during this time about ten inches of snow fell; that four-tenths of an inch had fallen at ten A. M., one inch at eleven and two and one-half inches at noon; that the temperature ranged from twenty-eight to forty-two degrees and was thirty at noon and that part of the snow had then melted; that there was a northeast wind with an average velocity of thirty miles which attained a maximum velocity of sixty-two miles per hour.

The plaintiff resided near the Christopher street station; and at about ten o'clock in the morning of that day, accompanied by her sixteen-year-old daughter she entered the Christopher street station and boarded a train and left the subway at Fourteenth street, and after doing some shopping they returned the same way, alighting from the train at the Christopher street station at about noon. It seems plaintiff had paid fourteen cents for their return fare and on alighting she was given tickets which entitled her to a rebate of four cents upon presenting them at the ticket office which she did. She testified that she then proceeded toward the stairway and that while she was closing her pocket book and when she was within about three feet of the foot of the stairs "my left foot went out from under me and I fell right down on my left side." She did not testify that she slipped and this is the only explanation she gave with respect to the accident excepting that she testified that when they went down the stairs in the morning she noticed that it was wet at the foot of the stairs for about three or four feet where snow had been blowing down and had settled at the bottom of the steps, to a depth of about one-half an inch in some places and in some places more; and that she fell on slush which wet her through to the skin and that before she fell and while she was approaching the stairs she noticed that " it was all slush " on the platform near the stairs, and she testified on redirect examination that her foot did not turn under her. Plaintiff says the snow was thick on the sidewalk when they first entered the station in the morning and that there was snow at the place where

First Department, December, 1917.    [Vol. 180.

she subsequently fell, which had been blown in, but not very much, " just a little here and there;" that there was more slush some places than others, " like where the people walked the most it was like driven (' dragged ') here and there;" that it had not all melted and there were pools on the surface " pretty near " all over the platform in front of the stairs and that where there were not pools of water there was slush by which she said she meant snow and water; that she was not wearing rubbers but her daughter was; that where people walked on the snow it melted.    The plaintiff's daughter corroborated her mother with respect to the snow, slush and water.    She testified that by the slush she meant snow and water, and that it was about an inch deep at the foot of the stairs but that in front of the ticket office the platform was merely wet; that the concrete forming the platform, at a point several feet from the foot of the stairs — it is, however, to be inferred from that she meant to include the place where her mother fell — was worn, causing a depression of about an inch and a half and was perfectly smooth; that she tested it as to smoothness by rubbing her foot back and forth on it after her mother fell; that there was slush and water on the platform where it was worn and more at the time of the accident than when they entered the station in the morning. The testimony with respect to the depression in the platform was received over defendant's objection and exception that it was not within the issues.    The daughter described her mother's fall as follows: " Her left foot went out in front of her, and she fell on her left side."

On the part of the defendant testimony was given tending to show that a porter whose duty it was to sweep the stairs and platform had swept the platform once that morning and sprinkled sawdust on it and was sweeping it again at the time of the accident and that there was no snow or slush upon it and that the only moisture on it was that brought by the feet of the passengers; that there was a revolving door on the stairway at the second landing; that there was no depression in the platform as claimed and that plaintiff fell on one of the lower steps.    Two statements made by the plaintiff and her daughter to the claim agent for the defendant were also received in evidence in which there was no mention

of the depression and in which it was stated that the platform was "wet from people's feet" where plaintiff fell and there was no mention of snow or slush. Evidence was given on the part of the plaintiff tending to show there was no revolving door on the stairway and no sawdust on the platform and nothing to prevent pedestrians from slipping.

The recovery cannot be sustained in any event owing to an error in the charge. It is alleged in the complaint that the plaintiff "was caused to slip and fall on the snow and slush lying on" the platform; and that the resulting injuries were sustained solely through the negligence and carelessness of the defendant in failing to keep the platform in a safe condition for travel and in permitting it to become in a dangerous and unsafe condition. No defect in the platform was charged. The general allegations of negligence do not even tend to state a cause of action excepting as they are connected with the facts stated with respect to the existence of snow and slush on the platform. Counsel for the defendant requested the court to charge that if there was a depression in the platform it did not contribute to the accident and that the jury must not consider the question as to whether or not there was a depression in the platform at the place where the plaintiff claims to have fallen. The court in declining so to charge said to the jury: "You have heard the testimony. The question is whether these premises were in an unsafe condition, and if in an unreasonable and unsafe condition, whether it was due to the negligence of the defendant," to which counsel for the defendant excepted. Counsel for the defendant thereupon requested that the jury be instructed that the defendant was under no obligation to maintain doors on the stairway and this was declined and an exception duly taken; but the court finally instructed the jury that there was no specific requirement of law obliging defendant to maintain a door, but the question was whether under the circumstances defendant was guilty of negligence in allowing the premises to become in an unsafe condition. The requests with respect to the depression in the platform were not technically accurate, but the instructions which the court gave the jury in declining the requests were erroneous. The jury might well have understood in view of the reception

of the evidence with respect to the depression and these remarks of the court that there could be a recovery on the theory that the defendant was negligent in allowing the depression to be or to remain in the platform whereas there was no such issue tendered and this objection was duly and timely taken. The only issue of negligence was with respect to the snow and slush. Evidence with respect to the condition of the platform was admissible on that issue, for on the whole case the question would be, did the defendant fail to exercise ordinary care with respect to the removal of snow and slush from the platform in view of the nature and condition of the surface on which the snow and slush rested. Of course it might constitute negligence to allow snow and slush to accumulate on an incline when it would not be negligence to allow it to accumulate on a level surface, and to that extent the condition of the platform was germane to the issue; but the jury were led to infer, I think, that they were to decide the broad question as to whether in the circumstances the defendant was guilty of *any* negligence with respect to the condition of the platform, for the charge did not confine their inquiry to the question as to whether the defendant was guilty of negligence with respect to the snow and slush.

We are also of opinion that if there be any evidence of defendant's negligence upon which the plaintiff was entitled to have the case submitted to the jury the verdict is clearly against the weight and preponderance of the evidence, and should not be permitted to stand. (See *O' Keeffe* v. *Mayor,* 29 App. Div. 524; *Strong* v. *Long Island R. R. Co.,* 129 id. 361; *Rusk* v. *Manhattan R. Co.,* 46 id. 100.) The jury would perhaps be warranted in finding that some of the snow blew down and the rest was carried down from the street on the feet of pedestrians. It had been storming less than three and one-half hours when the accident occurred, and while the storm lasted it is manifest that it would require diligence beyond the duty imposed upon the defendant to remove from this part of the platform all snow and moisture thus brought down upon the platform as rapidly as it came there. There is nothing to indicate that the accident was due to the *amount* of snow or slush on the platform if indeed it has been connected in any manner with the snow, slush or water.

Plaintiff did not even say that she slipped; but if the jury might infer from the description of the accident that she did slip, still it would be merely speculation to say that the snow or slush on which alone negligence is predicated in the complaint was the cause or even a contributing cause. The evidence is that the platform was slippery and whether that was owing to the fact that the alleged depression was due to the wearing away of the cement by travel or whether it was due to the fact that the surface was wet or moist is not shown. It would be unreasonable to hold this defendant responsible for allowing the platform to become moist or wet merely from an unseasonable snow storm of unusual severity such as this; and if the plaintiff slipped it is just as probable, I think, that she would have slipped on the wet or moist platform owing to the smoothness of the cement as that the accident was due to the presence of snow or slush.

The duty which the defendant owed passengers with respect to this passageway was only ordinary care. (*Kelly* v. *Manhattan R. Co.*, 112 N. Y. 443; *Rusk* v. *Manhattan R. Co.*, 46 App. Div. 100; *Weldon* v. *N. Y., N. H. & H. R. R. Co.*, 159 id. 649; *Strong* v. *Long Island R. R. Co., supra; Meginn* v. *Ramsdell*, 163 App. Div. 232. See, also, *Palmer* v. *Pennsylvania Co.*, 111 N. Y. 488; *Weston* v. *N. Y. Elevated R. R. Co.*, 73 id. 595; *McGuire* v. *Interborough Rapid Transit Co.*, 104 App. Div. 105.) Although the same rule of ordinary care is the measure of a carrier's duty with respect to the platforms to and from which passengers are obliged to step on alighting from and boarding trains, it was held in the *Weston* and *McGuire Cases* (*supra*) that this duty required greater vigilance with respect to the care of such platforms and might require that sand or ashes or other material be sprinkled upon the platform at such points even during the continuance of a storm which rendered the platform slippery and dangerous owing to the fact that the surface thereof had become lumpy and uneven and icy; but in *Kemp* v. *N. Y. C. & H. R. R. R. Co.* (135 App. Div. 773) it was held, in effect, that the authority of the decision in the *Weston* case should be confined to the facts upon which the adjudication was made and not extended to a rural station platform of a single-track steam railroad. In the *Meginn Case* (*supra*) it was held that failure to remove

ice on a ferry approach within an hour after the sleet storm which formed it ceased did not render the carrier liable. In *Kelly* v. *Manhattan R. Co.* (*supra*), where an intending passenger slipped and fell on ice on the stairs leading to an elevated railroad platform between five-thirty and six A. M. and it appeared that the ice was caused by a storm which commenced at midnight and ceased a couple of hours before the accident, it was held that the carrier was not liable. It there appeared that there was a railing at either side of the stairs and rubber tops on the steps. The court distinguished the *Weston* case and held that the company was neither obliged to sweep nor to sprinkle the steps with ashes or other material during the storm or until a reasonable time after it ceased. In *Palmer* v. *Pennsylvania Co.* (*supra*) it was held that the carrier was not obliged to remove snow from the platforms of its cars as it fell and was not liable for injuries to a passenger who slipped on snow and ice which accumulated during the journey. In *Rusk* v. *Manhattan R. Co.* (*supra*) it was held that the carrier had a reasonable time after the cessation of a snow storm before it was required to act with respect to an icy condition of the steps leading to its station caused by the storm and the decisions applicable to actions against municipal corporations were cited as authorities in point; and in the *Weldon Case* (*supra*) we held (citing *Palmer* v. *Pennsylvania Co., supra,* and *Bateman* v. *N. Y. C. & H. R. R. Co.,* 47 Hun, 429) that with respect to approaches to the stations of common carriers of passengers for hire their liability is the same or at least analogous to that of municipal corporations with respect to sidewalks. It is perfectly obvious that it could not be successfully contended that a municipal corporation would be chargeable with negligence for not removing wet snow, slush or water even from an uneven sidewalk even though it had actual notice, for the simple reason that the presence of snow, slush or water without *ice* would not render the walk obviously or inherently dangerous to pedestrians. In the case at bar there were railings on the stairway but not on the platform, but it cannot be held in these days of the extensive use of marble, polished stone, cement, concrete and other material having a smooth surface for floors and platforms that negligence may be predicated

Fox Const. Co., Inc., *v.* Dailey's Towing Line, Inc. 593

App. Div.] First Department, December, 1917.

for a failure to erect ropes or hand rails for the use of people walking on level floors or platforms. (See *Kline* v. *Abraham*, 178 N. Y. 377.)

It follows that the judgments and orders should be reversed, with costs, and the findings of the jury reversed and the complaints dismissed, with costs.

Clarke, P. J., Dowling, Page and Shearn, JJ., concurred.

Judgments and orders reversed, with costs, and complaints dismissed, with costs.