199 So. 840

### NORWOOD CLINIC, Inc. v. SPANN.

6 Div. 657.

Supreme Court of Alabama.

Jan. 16, 1941.

London & Yancey and Fred G. Koenig, Sr., all of Birmingham, for appellant.

Frank L. Parsons, of Birmingham, for appellee.

FOSTER, Justice.

Appellee was plaintiff below and recovered a judgment against appellant for personal injuries, from which this appeal was prosecuted.

The evidence shows that plaintiff was about sixty-four years of age; that he was a cripple from infancy caused by infantile paralysis, but was able to walk with care and the use of a cane. That he worked his way through college, and was a college professor until he retired in 1937.

In March 1938, he was going into the facility of appellant used for a medical clinic to have his eyes examined. In trying to enter the building, he slipped and fell and broke his leg, causing injuries of a serious nature. The amount of the verdict was not in any sense excessive. The questions relate to the liability of appellant, including errors claimed to have occurred in the trial.

It is first insisted by appellant's counsel that the evidence of negligence was of such unsubstantial sort as not to be sufficient to support the verdict, nor even to submit the question to the jury.

The door of the entrance was about thirty-eight inches from the sidewalk, and was four inches higher. The span was covered with a cement walkway, which was necessarily an incline, extending upward toward the door. This had been in use for several years, and was the main entrance to the clinic. The evidence shows that many thousand people each year walked over that walkway: in 1937 as many as 35,000 patients, including many who had received various forms of leg injuries, and some with paralysis, had been helped along this space, and many others not patients. Some evidence of a substantial sort tended to show that by such constant use, the cement walkway was worn slick. This was disputed. Others testified that such use tended to make it slick.

There was evidence that the city laws provided that a ramp should not be inclined more than one inch in height to eight inches in length. The one in question, if a ramp, was one inch to nine and one-fifth inches. And on that basis was within the city rule. But there was also evidence that there was a fall in the proportion of two inches in six inches, extending from near the top, and then flattened out. So that near the top the incline exceeded the specifications, though, over all, it did not. There were no grooves or ridges to help in this aspect of the question.

Plaintiff testified that he was going up this cement walkway, with a cane in his right hand and holding to his brother's arm with his left. That brother had died, and had not given his testimony. He further testified that he was walking carefully and as they approached the entrance his brother reached out to open the door, and while he was doing so plaintiff's feet slipped and he fell at a time when he was making a step: that the slope was slick enough for his feet to slip out from under him: that he fell from that cause, not because his legs gave way, nor because there was any foreign matter on the walkway.

■ Counsel for appellant argue the question with the admission that plaintiff was in the attitude of an invitee, and that as such appellant owed him the duty to use reasonable care to have said entrance to the clinic in a reasonably safe condition for plaintiff. Farmers' & Merchants' Warehouse Co. v. Perry, 218 Ala. 223, 118 So. 406; Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388. This applies to hospitals of this sort. Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443.

■ This means, we take it, that appellant must be held to have assumed that people of all sorts of ailments and personal infirmities will use this facility. That is its purpose. It is not primarily instituted to accommodate robust, strong, healthy people, nor even those of average normal physique, but the sick and infirm. It should be designed and maintained with that in view, and the reasonableness of its safety must be in respect to such infirm people as was this plaintiff. 45 Corpus Juris 701 (Negligence), section 76; O'Mara v. Hudson R. R. Co., 38 N.Y. 445, 98 Am.Dec. 61; Sheridan v. Brooklyn City R. Co., 36 N.Y. 39, 93 Am.Dec. 490.

■■ The jury should have more latitude in determining its reasonable safety for use of those who are infirm than if the place were designed to accommodate people of average physical condition. The authorities cited above are in accord. We have cases of various circumstances where invitees were caused to slip and fall. Each is decided upon an application of the same principles of law, but as applied to their respective circumstances. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; Hill Grocery Co. v. Hameker, 18 Ala. App. 84, 89 So. 850.

■ The circumstances of those cases are not similar to this one to the extent that they are very helpful in this. The burden is on plaintiff to show negligence. Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388; Woolworth Co. v. Erickson, supra.

In Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982, 33 A.L.R. 176, cited by appellant, plaintiff had such an injury in a store entrance with an incline in proportion of one inch to the foot (twelve inches) for five feet from the sidewalk to the store door. It was made of tile and had been there four years with no other accident. There was a small crack of one-eighth to three-sixteenths inch, but filled with cement. Plaintiff claimed her foot caught in this crack and she fell. The court found that the crack was negligible, and that because thousands had passed over it in the four years with no accidents proved conclusively that it was not so slick as not to be reasonably safe.

We are not so sure as to the controlling value of such evidence, assuming it to be admissible. See, Perrine v. Southern B. Co., 190 Ala. 96, 66 So. 705; Mayor, etc., of Birmingham v. Starr, 112 Ala. 98, 20 So. 424; City of Birmingham v. Comer, 239 Ala. 152, 194 So. 498; Hill Grocery Co. v. Hameker, 18 Ala.App. 84, 89 So. 850. The evidence was given without objection in this suit.

The fact that any number of people of different physical condition passed over the place without injury might tend to support a theory that it was reasonably safe for such sort of people. But there is no evidence that any one afflicted in the way in which this plaintiff was, had safely used the walkway in question without ample assistance. There was evidence that patients with fractures of the legs came over it on

crutches and were helped in. Plaintiff could probably have been helped in with sufficient aid. It may have been that their safety was due to the extent of their aid, rather than the status of the walkway.

It was the duty of the clinic to anticipate the use of this walkway by those in any manner of affliction, and use due care for them. In this case the probative value of the extent of the use of this place is more in respect to its having thereby become slick than of its safety when used by a cripple. It tends to corroborate the evidence that it was slick and had become so by such constant use.

Other cases of slippery floors are reported in the books, and cited by appellant: Garland v. Furst Store, 93 N.J.L. 127, 107 A. 38, 5 A.L.R. 275; Murphy v. Hudson, etc., R. Co., 180 App.Div. 585, 167 N.Y.S. 895; Abbott v. Richmond County Country Club, 211 App.Div. 231, 207 N.Y.S. 183; Id., 240 N.Y. 693, 148 N.E. 762; Tryon v. Chalmers, 205 App.Div. 816, 200 N.Y.S. 362; Id., 240 N.Y. 580, 148 N.E. 713; Wilson v. Werry, Tex.Civ.App., 137 S.W. 390. Those cases are where floors were constructed in business houses in the ordinary way, and held to be reasonably safe for average people. But the physical condition of the people was not emphasized, and not involved.

There is evidence here that this walkway, after construction, had become a slick surface over which it was intended infirm people should walk, and that it did not comply in some respects with the city regulations. The fact that no one else had been injured under such circumstances is not controlling. Whether due care had been used to safeguard the interests of persons afflicted as plaintiff was, we think, was properly left to the jury.

With respect to the fact that after the accident, grooves were cut out across the walkway, and the assignments of error in that connection. No one here questions the principle that plaintiff cannot show initially that after the accident defendant did some act which was intended to make the location safer for such use. Gulf, M. & N. R. R. Co. v. Havard, 217 Ala. 639, 117 So. 223; Louisville & Nashville R. R. Co. v. Malone, 109 Ala. 509, 20 So. 33.

But this is so only when such evidence is offered and intended to show thereby that the place was not reasonably safe before the alteration was made. It would be unjust to assume that because defendant used extreme care after the accident, that he should have done so before. But if such evidence has a tendency to prove some other disputed issue in the case, such as the identity of ownership or control of the locus, such evidence has been held to be admissible. Gulf, M. & N. R. R. Co. v. Havard, supra; Burnwell Coal Co. v. Setzer, 191 Ala. 398, 409, 67 So. 604.

Also where it is offered to contradict or impeach a witness or to lessen the weight of his expert opinion, it is admissible in proper cases. Bedgood v. Miller Mill Co., 202 Ala. 299, 80 So. 364 (9); Frierson v. Frazier, 142 Ala. 232, 37 So. 825; Going v. Alabama S. & W. Co., 141 Ala. 537, 37 So. 784.

This evidence came in the form of a photograph of the walkway taken with a yardstick extending from top to bottom, and it shows a depression and that the slope is not altogether uniform. It also necessarily shows the grooves which were not there when the accident occurred.

The witness Johnson testified for defendant that he was the chief inspector of weights and measures for the city, and stated the rule as to the proper grade of such a ramp, as he called it. That he examined it at the request of defendant in September 1939, after the accident in March 1938. That he had not examined it before. But its rise was in the proportion of one inch to nine and one-fifth, and well within the rule as to such matters. Then, on cross-examination, he testified that it was practically a straight edge from the threshold to the sidewalk; that if you put a ruler from the entrance down to the sidewalk the slope would be practically even all along. This conflicted with other evidence tending to show that there was a depression with greater percentage of decline at one point. At this time plaintiff had the court cause the jury to retire, whereupon he exhibited the picture with the yardstick to the court for a ruling. It was admitted.

Defendant was seeking to prove the condition of the ramp in September 1939, at a time when grooves had been made. The picture tended directly to shed light on the evidence of Johnson in other respects, and it was not error to admit it because it also incidentally showed the grooves, with no evidence even that defendant made them.

The witness was asked to describe the ramp as he saw it and as to which he had been testifying, and then mentioned the grooves. This did not violate the rule in question.

■ This witness was also allowed to testify (assignment of error 17) that such a ramp would be safer if it is grooved or chipped up. Being the chief inspector for the city, the jury might infer that he had some expert knowledge in that respect. Burnwell Coal Co. v. Setzer, 191 Ala. 398 (11), 67 So. 604; McNamara v. Logan, 100 Ala. 187(3), 14 So. 175; Stewart v. Sloss-Sheffield Steel & Iron Co., 170 Ala. 544, 54 So. 48, Ann.Cas.1912D, 815.

■ The evidence may also be said to be in respect to a matter of common knowledge, as to which the court would not be put in error for either admitting or rejecting it. See the discussion in Stewart v. Sloss-Sheffield Steel & Iron Co., supra, 170 Ala. page 549, 54 So. 48, Ann.Cas.1912D, 815.

■ We do not think the verdict of the jury should be set aside for insufficient support in the evidence or for the amount awarded. There was ample evidence in all respects.

The other assignments argued in brief have been duly considered, but we think they do not need discussion, and that no reversible error so appears.

The judgment is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.